There is no appearance of fraud on the part of complainant: if there was, that alone would be sufficient to induce the court to withhold its aid in compelling a specific performance of this agreement. The case being then wholly divested of fraud, imposition or misrepresentation, and defendant although a young man, yet not being in necessitous circumstances or his estate in expectancy, few of tlie cases that have boon cited are immediately applicable: for on one or other of the grounds above mentioned, most of the cases have been determined; as in the case of Barnardiston vs. Lingood, where B. was in distressed circumstances, and his estate in expectancy, lie was relieved against his bargain as being an inconsiderate one, and made without proper consideration. — -So in the case of Chesterfield vs. Janson;—How vs. Weldon was a transaction of fraud. The question for the consideration of the court is whether under all the circumstances of this case, the court will interfere and decree a specific execution of the agreement, or leave party to his remedy at law. The power of the court to .carry articles into execution is not doubted, and though discretionary, yet is not an arbitrary discretion; but must be governed by rules of equity. Now though there is no actual fraud charged on complainant, yet in order to entitle him to a specific performance of the agreement, it ought to he fair, certain, just, equal in all its parts, and for adequate consideration. If any of these ingredients are wanting the court will not decree a specific performance. That. *258 being a settled rule, of this court, we are to sec whether this case comes within it. As to the certainty of the thing sold, tliat will not admit a doubt. The land is part- ^ described in the agreement. Though there is more contained in the agreement than the defendant had a right to dispose of, and which from his answer he was apprised of, and which he certainly never could have intended to sell, his letter on that subject mentions his half of Acheson’s Island. Whether this agreement was fair, just and equal in all its parts, is next to be considered, it cannot be doubted we think, that the complainant must have known something of the value of the lands before his application to the defendant. The situation and fertility of soil in that part of the country is pretty well known to persons who have been resident any time in this country] and the pressing importunity of the complainant to conclude the bargain] his repeated visits to the defendant, at a time too when the land was under lease, and he could not get immediate possession, all plainly and strongly indicate that he knew very well what he was about. On the other hand the reluctance of defendant (a young man but just of age, ignorant of the land and its value) to determine the matter hastily] his wishing to consult with a friend whom he thought well acquainted with the value of land, shew plainly he was not dcsiroits of selling immediately: and that he was not sufficiently competent to determine on the value, (which has been clearly proved by the evidence of maj. Pinckney]) all these circumstances shew I hat though no fraud or imposition on complainant’s part, 7/et there was such an eagerness, such an anxiety in him to conclude the bargain, such an astuteness of conduct, ás do not give it all the marks of fairness, justice and equality. The next point is, whether there he an adequate consideration for the land ? Though an inadequate consideration may not alone be sufficient ground to set aside a contract, yet it is a material ingredient, and will go a great way where the property has been sold for a sum grossly inadequate to its real value.* The court al *259 though it may not go so far as to set aside the agreement, will not however lend its aid in compelling a specific, performance, hut leave the party to his remedy at law, to recover damages for the performance. That the consideration is enormously inadequate, we need only refer to the testimony of major Pinckney, from whence it appears that the land at the lowest valuation, must be worth fot;': times as much as was agreed to be given for it. Is not this then such a case as the lord chancellor mentions, where the inadequacy is so strong, gross and manifest, that a man of common sense must exclaim at the inequality of it? Had the deficiency been a few hundred pounds *260 only, the court would not have hesitated to decree a spe-ciñe performance.
1 Dnmat. 7h, hook 1, $ 9 Cooper*» Jus-■.bn in, p.
*260 Towel thinks the better opinion to be, that the mere fact of a bargain being unreasonable is not a sufficient ground to set it aside in equity, if the parties are of age, perfectly acquainted with their rights, each aware of what is done, free from deception, and speak what they respectively mean. He may be right but will it be said that all those circumstances concur in this case ? They certainly do not, for the defendant has contracted to sell the whole of the land when he was only entitled to half. Wad he aware of the land being worth four times as much as lie sold it for? Most undoubtedly not. But there is a distinction to be made between the court’s setting aside an unreasonable contract, after it is executed, and compelling a specific performance of such an one. In the latter case they will use their discretion with greater liberality, than in the former. Indeed if this contract had been executed in all its parts, without the circumstance of defendant’s being a young man just come of ago and he had *261 applied to liave it set aside, probably the court might have refused to do it: — But being altogether an executory contract, and the complainant coming here for a specific execution, this court will not depart from the constant rule in the case of a hard bargain, where it is not absolutely executed, but executory only; of refusing to carry It into execution.
It was objected that the defendant was of full age: this is true; but he was just come of age; only a few months. When under age the law took care of him. Young heirs even when of age are under the care of this court, and then want it most; the law taking care of them till that time.
If the parties at the. time of entering into an agreement respecting a claim capable of being precisely ascertained, he at the time of the contract ignorant of the precise value of it, but stipulates under an idea that what he is to re ceive will be equal in value to what he claims, this will be a sufficient ground for equity to set aside the agreement, if the thing received be not adequate to the value when precisely ascertained. It is pretty evident that the defendant was ignorant of the value of the property he was about to sell, aud that he parted with it under an idea that what lie was to receive was equal to the value of it, or he would most undoubtedly not have made the agreement lie did, and from the testimony of major Pinckney it is evident, that the sum stipulated for, was extremely inadequate to the value of the land, even when not in a state of cultivation. The value was at least four times as much as war, to be given for it; and this court will not decree a specific execution of articles, when extremely unreasonable or unconscionable, though no direct fraud proved; but will leave the party to his remedy at law.
It has been contended for complainant that the whole land should ho conveyed, though it is evident from the deed of settlement, defendant is entitled only to a moiety. To decree according to complainant’s wish, we mast deprive defendant’s brother of his right, which cannot bo done consistently with any principle of equity. Tisis court has certainly no right to order the brother to join in the conveyance. Lord Hardwicke has declared there *262 is no instance of decreeing a partial performance of arti-clcs, but it must decree all or none; and where some parts have appeared very unreasonable the court have said we not do that, aud therefore as we must decree all or none, the hill must be dismissed.
In the case of Corking vs. Pratt there the agreement was relative to the distribution of intestate’s estate, and it was set aside because the value of the distributive share was greater than was known at the time of the agreement. Underwood vs. Hitclicox, lord chancellor declared that the court is not obliged to decree every agreement entered into, though for valuable consideration. Agreements of which there should be specific performance should be for adequate consideration; and there not being adequate consideration in this case the court would not decree specific execution. And in the case of Gwynne vs. Heaton, the lord chancellor Thurlow, said, where the property sold is for a sum grossly inadequate, the court have never suffered it to stand. The real proportion of value has been stated in the case to shew that it was grossly inadequate. This is a very strong case; the most so of any cited and amongst the latest determinations. The cases of Young vs. Clarke, in Precedents in Chancery, 538; and Rein vs. Stukely, in 2nd Brown; are cases that have not been cited, where the court refused to decree specific execution of an unreasonable agreement. In one of those cases, the defendant had never seen the land, knew nothing of the nature or value of it, desired time to consider of it before he came to any agreement. It appeared and was proved that the lands were 'worth and plaintiff received One hundred pounds per annum more than he was to pay defendant: That defendant had no judgment of the value of land: By the importunity of plaintiff he was prevailed on to agree to make the leap: lie afterwards discovered the imposition and refused to execute the agreement. The court is not hound to decree specific execution, where articles appeal1 unreasonable or unjust, though •there is no direct fraud; yet from the great under value of land it appeared to be an unreasonable and shameful contract, yet it was good aud the court left plaintiff to his *263 legal remedy to recover what damages he could by nonperformance of the articles, and dismissed bill as to the specific execution.
The court on full consideration of the case under discussion and all the circumstances attending it, and from the evidence on the part of the defendant (although there is no proof of fraud or imposition on part of complainant) are of opinion that the sum for which the land was agreed to be sold is grossly inadequate to its real value: That being an unreasonable contract and a very hard bargain, it would be both unreasonable and unjustifiable to decree a specific performance of the agreement. They will therefore leave the complainant to his remedy at law to recover his damages for the non-performance of the agreement, and dismiss his bill with costs.

This is a question which calls for the exercise of the highest legal discretion — For as on the one hand courts of justice are cautious of *259 disturbing the contracts of individuals., adult, acting sui juris, not di:-qualified by idiocy or insanity, nor compelled by necessity; so on the other hand, it would be a great mischief to the community, and a reproach to the justice of the country, if contracts of very great inequality, obtained by fraud, or surprise, or the skilful management of intelligent men, from weakness, or inexperience, or necessity could not be examined into, and set aside. To steer the middle course has been found to be the difficulty.
The l'eluctance of the court to interfere has been manifested by many decided cases, in which it refused to set aside contracts. See Wood vs. Fenwick, Prec. Ch. 206. Willis vs. Terrigan, 2 Atk. 251. Nicholas vs. Gold, 2 Vesey, 422. Motte vs. Atwood, 5 Vesey, 845— And see the case of White vs. Damon, 7 Vesey, 30, 4, 5,—In which lord Rosslyn dismissed a bill for the performance of a contract on the ground of inadequacy merely: But on a re-hearing lord lildon said that inadequacy alone, did not warrant such a decree without other circumstances. The necessity the court has been under of overcoming its reluctance to interfere in contracts to prevent great injustice i; apparent from the following cases: Twistleton vs. Griffith, 1 P. Wms. 310. Clarkson vs. Hanway, 2 P. Wms. 203. Barnardiston vs. Lingood, 2 Atk. 133, Ibid. 324. How vs. Weldin, 2 Vesey, sen. 518; also, 2 Ver. 627. Evans vs. Lewellin, 2 Bro. C. C. 150 & 326; 2 Bro. P. C. 396; 3 Atk. 383, 5; 1 Ves. 12.
On the ground of inadequacy of price, the court appears to have had great difficulty to lay down any general rule. By the civil law a rule was prescribed, That in the sale of immoveables, if the price be less than half of the real value, at the time of the sale, the seller may get the sale to be declared void; and that independent of the honesty or knavery of the buyer, or of his ignorance of the knowledge of the value of the thing purchased. If there was no fault in the buyer, he should be bound to restore the fruits, only from the time of the demand; but if there were other vices in the sale, such as listin', fraud, or violence, the purchaser will be bound to make restitution of the fruits from the time of his possession o: ‘he thing, deduc'i-g interest of the price he paid.
*260 Our laws, however j ealous of protecting men in their property even against their own indiscretion, have never gone so far — And the rule seems to be that mere inadequacy of price, in a contract deliberately-made between two persons, conusant of their rights, and competent to manage their own affairs, shall not be a ground purely of itself, to vitiate the contract. But the decided cases express a qualification which in reality is a material variation of the rule itself: for it is added, that the inadequacy of price shall not vitiate the contract, unless it be so gross, that every good man would at once exclaim against it, and as would furnish violent presumptive evidence of fraud, imposition, or oppression in the buyer; or weakness, ignorance, or deep necessity in the seller. See Underhill vs. Howard, 11 Vesey, 209.—7 Bro. P. C. 70. Coles vs. Trecothick, 9 Vesey, 246.—4 Bro. P. C. 557. Emery vs. Wade, 8 Vesey, 517.—5 Ves. 846.
It is agreed on all hands that tire court is not bound to decree a specific performance in every case, where it will not set aside the contract; nor bound to set aside every contract, of which it will not decree the specific performance. In a case of great inadequacy, arising from the gross negligence of the agent, and a Want of due authority, the bill for specific performance was dimissed, althmigh there was no impeachment of the plaintiff; but without prejudice to his remedy at law. The court will not decree specific performance where there is any surprise, making it not fair and honest to proceed and call for specific performance. 10 Vesey, 305, 314, Mortlock vs. Buffer.